1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    FN CELLARS, LLC,                          Case No.  15-cv-02301-JD

              Plaintiff,

8

         v.
9                                              **ORDER RE MOTION TO DISMISS FOR
                                               LACK OF SUBJECT MATTER
     UNION WINE COMPANY,                        JURISDICTION**
10
              Defendant.                       Re: Dkt. No. 20
11

12          Plaintiff FN Cellars, LLC ("FN Cellars") has sued for declaratory relief and trademark

13   cancellation under the Lanham Act.  Dkt. No. 17.  FN Cellars seeks a declaratory judgment of

14   validity for its own trademark, and a declaration that its mark does not infringe on trademark

15   rights held by defendant Union Wine Company ("Union Wine").  It also seeks cancellation of

16   Union Wine's mark.  Defendant Union Wine has moved to dismiss for lack of subject matter

17   jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the dealings

18   between the parties have not given rise to a justiciable case or controversy under the Declaratory

19   Judgment Act.  Dkt. No. 20.  The Court denies the motion.

20                                     **BACKGROUND**

21          Two trademarks for wine are at issue in this case.  FN Cellars owns a "BELLA UNION"

22   trademark (U.S. Trademark Reg. No. 4,618,420) registered by the U.S. Patent and Trademark

23   Office ("USPTO") on October 7, 2014.  Dkt. No. 17 at ¶¶ 9-15.  Defendant Union Wine owns a

24   "UNION WINE CO." trademark (U.S. Trademark Reg. No. 4,486,053) that was registered on

25   February 18, 2014.  Dkt. No. 17 at ¶¶ 18-21.

26          On June 15, 2014, after a Notice of Allowance for the BELLA UNION mark had issued,

27   Union Wine's attorney sent a letter to FN Cellars' predecessor asserting its rights in the UNION

28   WINE CO. mark.  Dkt. No. 17 at ¶¶ 12, 22-23; Dkt. No. 20-1 (Reidl Decl.) at Ex. 1.  Union Wine

United States District Court
Northern District of California

1    highlighted "an obvious likelihood of confusion" between the parties' marks because "the marks

2    both contain the same dominant term 'UNION,' the goods are identical, they will move in the

3    same channels of trade and they will be purchased by the same type of consumers," and stated that

4    it "intend[ed] to petition to cancel [BELLA UNION] if the registration ever issues." Dkt. No. 20-

5    1 (Reidl Decl.) at Ex. 1; Dkt. No. 17 at ¶ 22. Union Wine's lawyer also requested "that your client

6    abandon the application and provide my client with an unequivocal undertaking not to use this

7    mark on wine." Dkt. No. 20-1 (Reidl Decl.) at Ex. 1; Dkt. No. 17 at ¶ 23. If such an undertaking

8    were not provided by July 1, 2014, Union Wine would "proceed with a cancellation action at the

9    earliest possible juncture." Dkt. No. 20-1 (Reidl Decl.) at Ex. 1; Dkt. No. 17 at ¶ 23. A second

10   letter from Union Wine's lawyer, sent on July 23, 2014, rejected "settlement terms offered" by FN

11   Cellars' predecessor and "your claim that the marks can co-exist without causing confusion." Dkt.

12   No. 21-1 (Kachigian Decl.) at Ex. 1; Dkt. No. 17 at ¶ 25. After that, the parties stopped

13   communicating with each other. Dkt. No. 17 at ¶ 25.

14            Union Wine filed a petition for cancellation of the BELLA UNION mark before the

15   USPTO Trademark Trial and Appeal Board ("TTAB") in February 2015, alleging that the parties'

16   marks were "highly similar," and that the BELLA UNION mark was "likely to cause confusion, or

17   to cause mistake, or to deceive as to affiliation, connection, or association" between FN Cellars

18   and Union Wine. Dkt. No. 17 at ¶ 26; Dkt. No. 20-1 (Reidl Decl.) at Ex. 2. The cancellation

19   action was stayed by the TTAB after this case was filed. Dkt. No. 20 at 3.

**DISCUSSION**

20

21   **I.     STANDARDS**

22            Well-established standards govern this motion. The Declaratory Judgment Act permits the

23   Court to "declare the rights and other legal relations of any interested party" to a "case of actual

24   controversy within its jurisdiction." 28 U.S.C. § 2201(a). A case of actual controversy exists

25   when the dispute is "'definite and concrete,'" and can be addressed by "'specific relief through a

26   decree of a conclusive character.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)

27   (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). All that is necessary for

28   jurisdiction is that "'the facts alleged, under all the circumstances, show that there is a substantial

United States District Court
Northern District of California

2

1    controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

2    warrant the issuance of a declaratory judgment.'" *Id*. (quoting *Maryland Cas. Co. v. Pac. Coal &*

3    *Oil Co.*, 312 U.S. 270, 273 (1941)).

4              Ninth Circuit decisions before and after *MedImmune* hold that trademark disputes are

5    justiciable under the Declaratory Judgment Act when "'the plaintiff has a real and reasonable

6    apprehension that he will be subject to liability.'" *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666

7    F.2d 393, 396 (9th Cir. 1982) (quoting *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d

8    938, 944 (9th Cir. 1981)).  The showing of apprehension "need not be substantial" when an

9    allegedly infringing mark is in use.  *See Societe de Conditionnement*, 655 F.2d at 944.  The Court

10   examines the acts of the defendant "in view of their likely impact on competition and the risks

11   imposed upon the plaintiff, to determine if the threat perceived by the plaintiff were real and

12   reasonable." *Chesebrough-Pond's*, 666 F.2d at 396.  The Ninth Circuit has reaffirmed this

13   approach post-*MedImmune*.  *See E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632,

14   634 (9th Cir. 2014).

15             The Court is not required to hear every declaratory judgment case.  It may decline to

16   exercise jurisdiction over a declaratory judgment action even when the facts show a live

17   controversy.  *Neilmed Prods., Inc. v. Med-Sys., Inc.*, 472 F. Supp. 2d 1178, 1182 (N.D. Cal. 2007).

18   The Supreme Court and Ninth Circuit have identified a number of prudential factors for the Court

19   to consider in deciding whether to exercise jurisdiction.  *Id*. at 1180 (citing *Brillhart v. Excess Ins.*

20   *Co. of Am.*, 316 U.S. 491 (1942); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.

21   1998).  Rather than repeat all those factors here, the Court will address later the pertinent ones as

22   warranted.

23             Although most of the salient terms in the parties' communications were alleged in the

24   Amended Complaint, Union Wine provided copies of its June 15, 2014 letter and its February

25   2015 Cancellation Petition in support of its Motion to Dismiss.  Dkt. No. 20-1.  With its

26   Opposition, FN Cellars provided a copy of the July 23, 2014 sent by Union Wine.  Dkt. No. 21-1.

27   These documents are properly before the Court and may be considered in deciding the motion.

28   *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("[A] Rule 12(b)(1) motion can

1   attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and

2   in so doing rely on affidavits or any other evidence properly before the court"); *Safe Air for*

3   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on

4   jurisdiction the district court may review evidence beyond the complaint without converting the

5   motion to dismiss into a motion for summary judgment").

6   **II.    SUBJECT MATTER JURISDICTION FOR THE VALIDITY AND**
7   **       CANCELLATION CLAIMS**

8          The parties agree that there is no independent basis for subject matter jurisdiction over

9   plaintiff's first claim, for declaratory judgment of validity for the "BELLA UNION" trademark

10  (U.S. Trademark Reg. No. 4,618,420), and third claim, for cancellation of Union Wine's "UNION

11  WINE CO." trademark (U.S. Trademark Reg. No. 4,486,053). *See* Dkt. No. 20 at 4-5; Dkt. No. 21

12  at 9-10.  The Court's jurisdiction over these claims is contingent upon a finding of subject matter

13  jurisdiction over plaintiff's second claim for declaratory judgment of non-infringement for the

14  BELLA UNION mark. *See Airs Aromatics*, *LLC v. Opinion Victoria's Secret Stores Brand*

15  *Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014).

16  **III.   SUBJECT MATTER JURISDICTION FOR THE NON-INFRINGEMENT CLAIM**

17         Significantly, Union Wine does not dispute that a definite and concrete controversy exists

18  with FN Cellars -- it expressly concedes that there is "undeniably a controversy between the

19  parties over the right to register their respective marks." Dkt. No. 20 at 9.  But Union Wine argues

20  against jurisdiction in this Court because "Union has never threatened Plaintiff with litigation and

21  damages; its only arguable 'threat' (made in June 2014) was to file a cancellation petition at the

22  TTAB." Dkt. No. 20 at 6.  In Union Wine's view, its lawyer's letters to FN Cellars' predecessor

23  in June and July 2014 are best read as a "professional courtesy" made "in anticipation of" the

24  subsequent TTAB cancellation proceeding, and "in an attempt to avoid a TTAB action," and not

25  as any kind of independent or implicit threat of litigation. Dkt. No. 23 at 3, 3 n.1.  Brushing away

26  the letters in this manner, Union Wine argues that there is no justiciable controversy here because

27  "the filing of a TTAB action … without more is insufficient to support a declaratory judgment

28  action for non-infringement." Dkt. No. 20 at 8.

United States District Court
Northern District of California

4

1          Union Wine gives itself far too much benefit of the doubt.  The undisputed record of

2    communications between the parties in pre-lawsuit correspondence and the TTAB cancellation

3    action paint a clear picture of a "substantial controversy" that is "definite and concrete" enough to

4    be addressed by the Court.  *See MedImmune*, 549 U.S. at 127.  Union Wine's June 2014 letter laid

5    out the elements of a potential infringement action by asserting its UNION WINE CO. mark and

6    expressing certainty about "an obvious likelihood of confusion" between the parties' marks.  Dkt.

7    No. 17 at ¶¶ 22-23; Dkt. No. 20-1 at Ex. 1.  The letter went on to threaten that Union Wine would

8    "proceed with a cancellation action at the earliest possible juncture" unless the BELLA UNION

9    mark were abandoned and its owner provided Union Wine "with an unequivocal undertaking not

10   to use [the BELLA UNION] mark on wine."  Dkt. No. 17 at ¶ 23; Dkt. No. 20-1 at Ex. 1.  These

11   facts amply establish the existence of an actual and justiciable controversy.  *See Chesebrough-*

12   *Pond's*, 666 F.2d at 396-97 ("reasonable to infer … a threat of an infringement action" from a

13   letter that stated "a prima facie case for trademark infringement" and was sent "declaring [an]

14   intent to file opposition proceedings"); *E. & J. Gallo*, 583 F. App'x at 635 (finding subject matter

15   jurisdiction where Gallo's supplier, on the eve of distribution, received a "demand that all

16   distribution of the Camarena bottle cease on the grounds that the Camarena and 1800 bottles were

17   confusingly similar").  That Union Wine ultimately did file a cancellation action, again

18   "invok[ing] the language of trademark infringement and dilution," further supports a finding of

19   jurisdiction.  *See Neilmed*, 472 F. Supp. 2d at 1181 (finding subject matter jurisdiction in a case

20   based on the substance of a notice of opposition alone).

21         None of Union Wine's arguments compel a different conclusion.  Union Wine's

22   explanation that the June 2014 letter used the "language of infringement" only to identify the

23   grounds for a threatened cancellation action is an after-the-fact spin to duck this lawsuit.  Dkt. 23

24   at 3.  It does nothing to dispel FN Cellars' reasonable apprehension that the legal language used in

25   the letter -- and sent by a lawyer -- was an infringement threat.  *See Chesebrough-Pond's*, 666

26   F.2d at 396 (applying a "flexible approach that is oriented to the reasonable perceptions of the

27   plaintiff").  The letter did not need to contain an express threat that defendant would sue, or any

28   other formulaic words, to create an actual controversy.  *See id.* at 397; *Societe de*

United States District Court
Northern District of California

1   *Conditionnement*, 655 F.2d at 945.  And Union Wine's claim that it "never demanded that

2   Plaintiff cease using the mark" is rebutted by its own letter and borders on a misrepresentation to

3   the Court.  Dkt. No. 20 at 7; Dkt. No. 20-1 at Ex. 1 ("We therefore request that your client …

4   provide my client with an unequivocal undertaking not to use this mark on wine.")  Although

5   Union Wine claims now that it "has never had any intention of seeking a damages award," Dkt.

6   No. 23 at 5, it has not given FN Cellars a covenant not to sue or any other formal assurance

7   backing up its purportedly peaceful intentions.  To the contrary, at the hearing on this motion it

8   highlighted the possibility of filing counterclaims against FN Cellars.  The plaintiff's apprehension

9   of suit here was eminently reasonable.  *See Chesebrough-Pond's*, 666 F.2d at 397; *Neilmed*, 472

10  F. Supp. 2d at 1181-82.

11          Union Wine's effort to shift attention to the plaintiff is equally misdirected.  Union Wine

12  argues that FN Cellars could not have had "any apprehension of immediate injury" because it

13  "began using [its] mark in August 2014" and has not alleged that its "use of its trademark was in

14  any way threated [sic] or impacted by the TTAB action."  Dkt. No. 20 at 6.  Pulling a random

15  factual thread out of *Chesebrough-Pond's*, Union Wine argues that FN Cellars' choice to continue

16  using its mark -- despite Union Wine's threats -- shows that it had no "reasonable apprehension of

17  an infringement lawsuit."  Dkt. No. 23 at 4.  Union Wine misapprehends the legal standard.  The

18  fact that a plaintiff does not fold after a demand letter and abandon use of a mark does not negate

19  reasonable apprehension.  To the contrary, that plaintiff's "use of the allegedly infringing mark is

20  ongoing actually makes the burden of showing apprehension lower."  *Neilmed*, 472 F. Supp. 2d at

21  1181 (citing *Societe de Conditionnement*, 655 F.2d at 944).

22          Taken as a whole, the facts and circumstances alleged in the Complaint and accompanying

23  documents show a substantial controversy "of sufficient immediacy and reality to warrant the

24  issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127.  A declaratory action is

25  appropriate here so that plaintiff is not forced into the dilemma of choosing between foregoing

26  competition in the market or "risking substantial future damages and harm to relationships with its

27  customers and retailers."  *Chesebrough-Pond's*, 666 F.2d at 397.

28

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1  IV.    EXERCISE OF JURISDICTION

2          The Court finds that no prudential factors weigh against the Court's exercise of discretion.

3  *See Dizol*, 133 F.3d at 1225.  This is a trademark action based on federal law, and so there are no

4  state law issues in this case.  There is no evidence of duplicative litigation -- the TTAB

5  cancellation action, even if it were counted, has been stayed in favor of this action.  Dkt. No. 20 at

6  3; *see Chesebrough-Pond's*, 666 F.2d at 397 (finding a PTO action no barrier to an action for

7  infringement).  Although defendant alleges that "[w]hat Plaintiff is really trying to do here is to get

8  the cancellation case of the TTAB" so that the issues may be "decided by a jury applying Ninth

9  Circuit law," Dkt. No. 20 at 8, filing a declaratory action in this district does not amount to forum-

10  shopping, especially when it is the acts of defendant that created federal court jurisdiction for this

11  case in the first place.  *See Neilmed*, 472 F. Supp. 2d at 1182 ("the mere commencement of federal

12  litigation does not constitute forum-shopping or procedural fencing, however expensive litigation

13  might be.")  A declaratory action is preferable to a TTAB action for addressing "all aspects of the

14  controversy" between the parties, because the TTAB cannot address a trademark non-infringement

15  claim.  *See Dizol*, 133 F.3d at 1225 n.5; Dkt. No. 20 at 7.  Consequently, the Court will exercise its

16  discretion to take jurisdiction over this declaratory judgment action so the various trademark

17  infringement and cancellation claims between the parties may be resolved in an expeditious

18  manner.

19                                          **CONCLUSION**

20          The Court denies Union Wine's motion to dismiss.  The Court finds and exercises subject

21  matter jurisdiction over FN Cellars' request for declaratory judgment of non-infringement, and

22  consequently, over its trademark validity and cancellation claims.  As directed at the hearing,

23  Union Wine will have 10 days from the filing of this order to respond to the amended complaint.

24          **IT IS SO ORDERED.**

25  Dated: September 1, 2015

26

27  _____

28  JAMES DONATO
    United States District Judge

7